### WASHINGTON WATER POWER CO. v. HARBAUGH.

(District Court, D. Idaho, N. D. August 30, 1918.)

No. 701.

1. ELECTRICITY ⬅4—LICENSES—RIGHT OF WAY—INDIAN RESERVATION—REVOCATION BY PATENT.

In view of the ruling of the Secretary of Interior a license granted plaintiff pursuant to Act Feb. 15, 1901, to maintain a power line across the Cœur d'Alene Indian reservation, held not revoked by the granting of a patent under Act June 21, 1906, to lands used as part of the right of way, though no reservation was contained therein.

2. ELECTRICITY ⬅4—LICENSES—RIGHT OF WAY—INDIAN RESERVATION.

A permit under Act Feb. 15, 1901, to construct a power line over the Cœur d'Alene Indian reservation, held a mere license revocable by the

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Secretary of Interior, together with a right of way for a telephone line granted to the same company under Act March 3, 1901, § 3; the latter being a mere incident to the license.

3. ELECTRICITY ⊙⇒4—RIGHTS OF WAY—DUTIES OF OWNER.

Where a patentee of public lands took same burdened by license for power line granted power company, *held*, that power company was entitled to access under certain conditions prescribed to govern both parties.

In Equity. Suit by the Washington Water Power Company, a corporation, against C. W. Harbaugh. Decree for plaintiff.

John P. Gray, of Cœur d'Alene, Idaho, for plaintiff.
C. H. Potts, of Cœur d'Alene, Idaho, for defendant.

DIETRICH, District Judge. [1, 2] The defendant is the owner of 160 acres of land in Kootenai county, Idaho, across which extends a high-tension power line owned and operated by the plaintiff. The land was formerly part of the Cœur d'Alene Indian reservation, and while it was still tribal property the power line was constructed, under a permit granted by the Secretary of the Interior on July 7, 1902, pursuant to provisions of Act Feb. 15, 1901, c. 372, 31 Stat. 790. Upon the same poles the plaintiff also maintains a telephone line, used in connection with the maintenance and operation of the power line, the application for which was approved by the Secretary of the Interior April 15, 1902, under section 3 of the act of March 3, 1901 (31 Stat. 1083, c. 832). After the construction of the power and telephone line, Congress made provision for the opening of the reservation, by Act June 21, 1906, c. 3504, 34 Stat. 335. Pursuant to the terms of this act, the land in question was allotted to one Sophia Christene Mishell, an Indian, who died before final patent issued, and thereafter, on February 8, 1915, it was duly offered for sale, and the defendant, being the highest and best bidder therefor, became the purchaser. Patent in fee simple issued under date of August 18, 1915. The patent contains no notation of any kind referring to the power and telephone line or the right of way therefor. The defendant had knowledge of the existence of the power line at the time he purchased, and apparently made no inquiry touching the rights or claims of the plaintiff company. After his purchase he inclosed the land with a fence, but left no gateways or other openings through which the plaintiff could enter for the purpose of inspecting and repairing its line. He also plowed up the land along the line. It is also alleged in the complaint that he declined to permit the plaintiff to patrol the line, and gave out and threatened that he would prevent it and its employés from going on the same. The plaintiff asserts a right of way extending 50 feet upon either side of its line, and prays for an injunction restraining the defendant from interfering with its proper use of the right of way.

It is not questioned by the defendant that the plaintiff duly procured a right of way for the maintenance of a telephone line, and a permit for the construction and maintenance of its power line, at the dates hereinbefore stated and pursuant to the provisions of the acts of Congress above cited. His contention is that the telephone line is

a mere incident of the power line, and that for the transmission line the plaintiff never acquired anything more than a revocable license, and that the issuance of the patent ipso facto operated to revoke the license. It seems clear that the right acquired for the telephone line was in the nature of an easement, and 'that the right acquired for the maintenance of a power line was in the nature only of a permit or license revocable at the will of the Secretary of the Interior. It is further true that the telephone line is a mere incident of the transmission line. Hence the controlling question is whether the license or permit for the power line was revoked by the issuance of patent. In transactions between private individuals the general rule is that a conveyance of the land by the licensor operates to revoke the license, and all rights and privileges of the licensee terminate as of course. This principle, it seems, was for some time recognized by express rule of the Interior Department, as being applicable to licenses granted under the act of February 15, 1901, but upon August 23, 1912, after consideration, the conclusion was reached by the department that, "to effectuate the purpose of the statute, it is necessary that a permit once given should be superior to the rights of the subsequent patentee of the land until such time as the permit is duly revoked by the Secretary of the Interior in the exercise of the express authority given by the statute." (Letter of August 23, 1912, to the Commissioner of the General Land Office, by Walter L. Fisher, Secretary of the Interior.) In discussing the question, among other things, the honorable Secretary said:

"The rule of private real property law under which such a license is revoked by the transfer of the fee-simple title has no application to either the legal or the economic data with which Congress was dealing in this legislation, and therefore the intent to enact the said rule should not be imputed to Congress in the absence of clear implication of such intent."

And again:

"In view of the permanent character of the works authorized to be constructed under the act of February 15, 1901, and the large investment necessary to such construction, the statute ought not to be interpreted as giving a precarious tenure except in so far as clearly appears from the words used by Congress. After careful consideration of the matter, I am of the opinion that the intent of Congress was to protect the public by retaining in the hands of the Secretary of the Interior full control over water power development, through the device of making permits revocable at his discretion. The statute authorized, in more generous and comprehensive terms than had been used in any preceding statute, the development of water for domestic and public supply, irrigation, mining, and power, and also the development and transmission of electricity. Its primary purpose was to encourage development under unquestioned public control. The former regulation, which provided that 'the final disposal by the United States of any tract traversed by the permitted right of way is of itself, without further act on the part of the department, a revocation of the permission, so far as it affects that tract,' was directly contrary to the purpose of the statute as above interpreted. It discouraged development by making the title of the permitee subject to that of the final patentee of the land occupied under the permit, and it abandoned all attempt at public control as soon as the land was finally disposed of."

Accordingly, by express regulation, which was still in force at the time the defendant purchased the land and received his patent, it was provided that—

"The final disposal by the United States of any tract traversed by a right of way permitted under the said act shall not be construed to be a revocation of such permission in whole or in part, but such final disposal shall be deemed and taken to be subject to such right of way until such permission shall have been specifically revoked in accordance with the provisions of said act."

It is to be admitted that the language of the act does not put the intent of Congress beyond all doubt, but, the reasoning of the honorable Secretary as in part set forth in the foregoing extracts from his letter of August 23, 1912, is not without force, and besides, under a familiar rule, some weight is to be accorded to the practical construction given to a doubtful statute by a high administrative officer. The view is therefore adopted that the issuance of the patent to the defendant did not revoke the plaintiff's license. It may be unfortunate, but it is not of controlling importance, that the patent did not contain a notation referring to the plaintiff's right of way, as required by the regulations of August 23, 1912. The record does not purport to furnish any explanation for this omission, but in view of the other express provisions of the regulations it cannot be held that the silence of the patent in this respect imports an intent on the part of the Secretary of the Interior to revoke the license. It is much more reasonable to assume that the absence of the notation is the result of inadvertence or carelessness on the part of some subordinate officer or employé, and neither the right of the plaintiff to use such right of way nor of the government to control it could be divested by a mere clerical omission. It is hardly possible to contend that the defendant was in any wise misled to his injury. Admittedly he knew that the plaintiff was maintaining and operating the transmission line, and so far as appears he was willing to purchase the property subject to such right as it then had. When he made his offer he had no assurance or intimation that a patent would be issued without a notation referring to the right of way. Accordingly it is held that neither the integrity nor the extent of the plaintiff's right was affected by the issuance of the patent.

[3] The other important question relates to the measure of such right. It is hardly necessary to say that the courts can neither enlarge nor diminish such right as was conferred by the Secretary of the Interior. The definition of this right is to be looked for in the instrument of license. The writings constituting the license consist of a map filed by plaintiff with the Secretary of the Interior simply delineating by course and distance its proposed power line, and of the following indorsement thereon:

"Dept. of the Interior, July 7, 1902.

"The use of the right of way shown on the map is hereby permitted in accordance with the provisions of the act of Congress approved February 15, 1901—31 Stat. 790—and the regulations, present or future, thereunder.

"E. A. Hitchcock, Secretary."

It will be noted that neither upon the map nor in the indorsement thereon is any specific width designated. It must therefore be held that it was the intention of the plaintiff to claim and of the Secre-

tary of the Interior to grant only such occupancy and use, within the maximum width of 100 feet authorized by law, as were reasonably necessary to enable the plaintiff to construct, maintain, and operate its line, and such is now thought to be the measure of the plaintiff's rights. The land belongs to the defendant. He has the right to occupy and use the same, subject to the reasonable needs of the plaintiff in maintaining and operating its line. By the evidence it is shown that, in maintaining and operating the line, the employés of the plaintiff must from time to time pass along it for the purpose of inspection, and of course it will also be necessary to have access at irregular intervals for the purpose of repairs and renewals. It is not necessary that the line be excluded from the defendant's inclosure; but if he maintains fences he must provide gates therein along the line, for the plaintiff's use—gates of sufficient width for the passage of ordinary vehicles. It will be the duty of the plaintiff to furnish locks and to keep such gates locked. In passing along the line the plaintiff's employés must take care not to do more injury to the defendant's growing crops than may be reasonably necessary, and they must keep within 50 feet of the center of the line, and within a roadway upon one side or the other. Likewise, in making repairs or renewals, reasonable care should be exercised not to do unnecessary damage to crops growing along and near the line.

A proper form of decree will be prepared by counsel for the plaintiff, and submitted to counsel for the defendant for his approval, before it is presented for signature.